**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*, [1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |
| RHODIUM JV LLC, RHODIUM 30MW LLC, RHODIUM 2.0 LLC, RHODIUM 10MW LLC, RHODIUM ENCORE LLC, AIR HPC LLC, JORDAN HPC LLC, RHODIUM INDUSTRIES LLC AND RHODIUM RENEWABLES LLC, | § § § § § § § § | |
| | § | |
| Plaintiffs, | § | Adv. Proc. No. 25-_____ |
| | § | |
| v. | § | |
| | § | |
| WHINSTONE US, INC., RIOT PLATFORMS, INC., | § § | |
| | § | |
| Defendants. | § | |

**COMPLAINT**

1.      Plaintiffs Rhodium JV LLC ("Rhodium JV"), Rhodium 30MW LLC ("Rhodium

30MW"), Rhodium 2.0 LLC ("Rhodium 2.0"), Rhodium 10MW LLC ("Rhodium 10MW"),

Rhodium Encore LLC ("Rhodium Encore"), Air HPC LLC ("Air HPC"), Jordan HPC LLC

("Jordan HPC"), Rhodium Industries LLC ("Rhodium Industries"), and Rhodium Renewables

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

LLC ("Renewables"), collectively "Rhodium," as debtors and debtors in possession in these chapter 11 cases, by and through their undersigned counsel, hereby bring this complaint against Whinstone US, Inc. ("Whinstone"), and its parent company Riot Platforms, Inc., ("Riot"), for breach of contract and tortious interference. Rhodium is entitled to more than ***$300 million in damages***—plus exemplary damages, attorneys' fees, pre-judgment interest, and post-judgment interest—and an injunction stopping Riot and Whinstone's unlawful efforts to put Rhodium out of business.

## <u>INTRODUCTION</u>

2.      For years, Whinstone and Riot have done everything they could to destroy Rhodium. Defendants' motives are clear, and their actions unlawful. As one court predicted, Whinstone's actions "could come back to haunt" the company. Ex. A at 1. That time is now.

3.      Rhodium is a bitcoin mining company that operates at Whinstone's facility in Rockdale, Texas. Whinstone provides hosting services, including power, to bitcoin mining companies, and does not mine bitcoin itself. In 2020, Whinstone agreed to provide Rhodium with 155MW of power, and, the following January, agreed to provide 100MW more. These contracts—which guaranteed power at a fixed price below the market price—were vital to Rhodium. The company could not exist without them.

4.      The problem for Rhodium was that Riot, a direct competitor, desperately wanted the power for itself. Riot is one of the country's largest publicly traded bitcoin mining companies, and in the spring of 2021, it acquired Whinstone. Riot did so, not to run Whinstone's hosting-services business, but to eliminate the business, remove customers, and take their power for Riot's own bitcoin mining operations.

5.     Within a month of acquiring Whinstone, Riot directed its new subsidiary to terminate the recently signed contract with Rhodium for 100MW and give the power to Riot. Whinstone and Riot did the same to Whinstone's other customers.

6.     Riot then tried pressuring Rhodium into "renegotiating" its contracts with Whinstone and relinquishing all the benefits of those contracts, including the below-market price.

7.     When Rhodium refused, Riot and Whinstone took matters into their own hands, breaching the contracts and attempting to cripple Rhodium. Riot and Whinstone withheld tens of millions of dollars in energy credits owed to Rhodium under the contracts; failed to provide Rhodium with water suitable for bitcoin mining as required by the parties' agreements; and failed to comply with contractually required "uptime" commitments—in essence, pilfering Rhodium's power and giving it to Riot or selling it on the grid. Whinstone also filed frivolous lawsuits that flouted mandatory arbitration provisions, raised meritless claims, and attempted to debase Rhodium with its creditors and business partners.

8.     When that was not enough, Riot upped the ante and directed Whinstone to turn off Rhodium's power completely. Riot and Whinstone used their armed security to block Rhodium's access to its facility. They sent Rhodium a purported termination notice stating that the power contracts were invalid and unenforceable, and insisted that Rhodium leave the premises.

9.     At every turn, Riot and Whinstone's unlawful campaign has been met with stinging rebuke. Multiple judges and arbitrators have uniformly ruled in Rhodium's favor, entered multiple injunctions, and admonished Riot and Whinstone for their anticompetitive and predatory tactics. While such interim relief has allowed Rhodium to stay alive during this litigation, it does not erase the substantial harm that Riot and Whinstone have wrought against Rhodium and threatened to continue.

10.     Moreover, Whinstone's malicious conduct was not limited to willfully breaching agreements and taking Rhodium's power. In 2021, Whinstone flat-out lied to Rhodium in an effort to underpay energy credits. During Winter Storm Uri, Whinstone turned off Rhodium's power and sold it back to the grid, grabbing a massive windfall. Under the parties' contracts, a significant portion of those profits belonged to Rhodium. Well aware of this fact, Chad Harris—a co-founder of Whinstone and Whinstone's former CEO—lied to Rhodium and claimed that Whinstone had received **_no_** energy credits. To this day, Whinstone and Riot have not paid those—or any—energy credits.

11.     Riot and Whinstone have also sought to ruin Rhodium's other investments. Until recently, Rhodium mined bitcoin in Temple, Texas, through the entity, Rhodium Renewables. In the summer of 2024, Rhodium sought to sell its interest in Temple to obtain a much-needed cash infusion, which was necessary to defend itself against Riot and Whinstone's tactics. Knowing this, Riot and Whinstone sought to kill the deal. Whinstone filed a frivolous lawsuit in Tarrant County, Texas, naming Rhodium Renewables as a defendant and alleging a conspiracy against Whinstone—*even though Rhodium Renewables did not even exist at the time of the alleged conspiracy*. The only reason to name Rhodium Renewables was to torpedo the sale of the Temple facility. Riot and Whinstone succeeded. Rhodium was unable to sell Temple and was forced into bankruptcy. Riot then, unashamedly, dropped Rhodium Renewables as a defendant and tried to buy Temple itself at a reduced price.

12.     The total damages caused by Riot and Whinstone's unlawful actions exceed $300,000,000, not including pre- and post-judgment interest, exemplary damages, and attorneys' fees.

## PARTIES

13.     Plaintiffs Rhodium 30MW, Rhodium 2.0, and Rhodium Encore are Texas limited liability companies with their principal place of business in Houston, Texas.

14.     Plaintiffs Rhodium 10MW, Rhodium Renewables, Rhodium Industries, and Jordan HPC are Delaware limited liability companies with their principal place of business in Houston, Texas.

15.     Rhodium JV is a holding company for Rhodium 30MW, Rhodium Encore, Rhodium 2.0, and Rhodium 10MW. Rhodium JV is a Delaware limited liability company with its principal place of business in Houston, Texas.

16.     Air HPC is a holding company for Jordan HPC. Air HPC is a Delaware limited liability company with its principal place of business in Houston, Texas.

17.     Whinstone is a Delaware corporation with a principal place of business in Rockdale, Texas. Whinstone is a wholly owned subsidiary of Riot.

18.     Riot is a Nevada corporation with its principal place of business in Castle Rock, Colorado. Riot operates bitcoin mining operations in Rockdale, Texas, and Corsicana, Texas. Riot has a registered agent in Austin, Texas. As set forth more fully herein, at all relevant times, Whinstone has acted as Riot's agent and alter ego.

## JURISDICTION AND VENUE

19.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. The Debtors confirm their consent to the entry of a final order by the Court.

20.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

21.     The statutory basis for the relief requested herein is § 105 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure.

## **BACKGROUND**

**I.     Rhodium and Whinstone establish a joint venture in which Whinstone provides a ten-year energy deal and Rhodium invests over $150 million to build out the Rockdale site.**

22.     Rhodium is an industrial-scale bitcoin mining company operating at a facility in Rockdale, Texas, and until recently in Temple, Texas. Rhodium's Rockdale operation includes tens of thousands of specialized bitcoin mining computers. Those bitcoin mining computers require a substantial amount of electricity, not only to power their operations but also to support the cooling systems necessary for optimal performance. These cooling systems also require water to operate most efficiently.

23.     Whinstone holds the lease to use the land at the Rockdale site and the electricity and water that are provided to the site. Whinstone mines no bitcoin itself.

24.     When Rhodium's principals first met Whinstone's then-CEO, Chad Harris, in 2019, the Rockdale site was nothing more than a large plot of empty land. At the time, Whinstone had few employees, limited prospects, and virtually no money.

25.     Rhodium and Whinstone agreed to a 10-year deal for electricity—the single most important cost input for bitcoin mining. Critical to the deal was the guaranteed, fixed-price of electricity for the 10-year term. As part of the agreement, Rhodium would pay tens of millions of dollars to build out a portion of the site as a bitcoin mine.

26.     Whinstone and Rhodium accordingly executed a series of power contracts (also known as "hosting" or "colocation" agreements) between Whinstone and the various operating entities. These consisted of an initial contract for Whinstone to provide Rhodium with 30MW of

electricity, and then a series of twenty identical contracts for 5MW of electricity each (collectively, the "Power Agreements").

27.     Each of the Power Agreements contains nearly identical terms. Primarily, these Agreements require Whinstone to provide Rhodium a specified amount of electricity at a fixed price for 10 years. *See* Ex. B (Rhodium 30MW Power Agreement) §§ 3.13, 14.1; Ex. C (Operational 5MW Power Agreements) §§ 3.13, 13.1.

28.     The Power Agreements also require Whinstone to "sell electricity" back to the grid "in lieu of providing electricity to [Rhodium]" "if the ERCOT Market profitability exceeds" a certain threshold: "250% of the contract price."[2] Ex. B § 5.8; Ex. C § 4.8. When this occurs, the "profit will be distributed 100% to [Rhodium]." Ex. B § 5.8; Ex. C § 4.8. In other words, when the price of electricity soars past a certain point, Whinstone is supposed to sell the power to the grid and give the profits to Rhodium.

29.     Over the next two years, Rhodium invested over $150 million to build out what is now known as "Building C" at the Rockdale site. Along the way, it created four operating entities (Rhodium 30MW, Rhodium Encore, Rhodium 2.0, and Rhodium 10MW), and validly assigned the various Power Agreements to those entities. Rhodium 30MW built out and operationalized the 30MW Power Agreement. The other operating subsidiaries collectively built out and operationalized fourteen of the 5MW Power Agreements. Today, Rhodium 2.0 operates under seven of the 5MW Power Agreements; Rhodium Encore operates under five of the Power

---

[2]     "ERCOT" refers to the Energy Reliability Council of Texas, the organization that operates Texas' electrical grid.

Agreements; and Rhodium 10MW operates under two.[3] Rhodium 30MW, Rhodium 2.0, Rhodium Encore, and Rhodium 10MW are all liquid-cooled (also called immersion cooling) mining operations in Building C at the Rockdale site. The remaining six 5MW Power Agreements, which have now been assigned to Rhodium 30MW, have not yet been operationalized.

30.     In late 2020, Rhodium and Whinstone agreed on a similar structure to build out an "air mine" in a different building at the Rockdale site, "Building B." The parties created Air HPC to serve as the holding company for this joint venture and Jordan HPC to be the operating entity that operates this air mine. At that time, Air HPC owned a partial stake in Jordan HPC, with outside investors (who funded Jordan HPC) also previously owning a share of Air HPC. Rhodium spent $12 million to build out this portion of Building B. Whinstone executed a 25MW power contract with Jordan HPC (the "Jordan HPC Power Agreement"). Ex. D. Whinstone then received a 50% synthetic dividend in Air HPC. Ex. E § 6.1 (the "Air HPC Profit Share Agreement"). Whinstone's profit share is calculated pursuant to a formula set out in the contract.[4]

31.     A few months later, Whinstone agreed to provide Rhodium another 100MW of power in "Building D." The parties executed this contract on January 7, 2021. Ex. F.

32.     And, in August 2021, Rhodium and Whinstone executed a Water Supply Services Agreement ("Water Agreement"), which required Whinstone to provide Rhodium "water supply services" essential to the success of Rhodium's bitcoin mining business. Whinstone committed to

---

[3]     This division corresponds with different investor groups who contributed the money to build  out  and operationalize each portion of the site. Because of the substantial funding contributed by outside investors, Rhodium JV only owns a portion of each operating subsidiary. Today, through a "roll-up" transaction, these investor groups now hold their interest in the form of equity in Rhodium Enterprises, Inc., which in turn owns portions of the operating entities.

[4]     Whinstone received a higher profit share in the Air HPC Profit Share Agreement (50%) than in the Rhodium JV Profit Share Agreement (12.5%) because Rhodium was not required to capitalize Building B. By contrast, Rhodium capitalized the entirety of Building C.

build infrastructure to carry water to Rhodium in Rockdale that Rhodium could use to cool down its bitcoin miners. Prior to signing the agreement, Whinstone indicated that the water would be treated, which was necessary to make the water useable in a bitcoin mining operation. The Water Agreement requires that "[a]ny work to be done by or on behalf of Whinstone in connection with the provision of the Water Supply Services will be performed in a ***commercially reasonable, timely, and workmanlike manner*** in accordance with generally recognized commercial construction standards in Texas." Ex. G § 5 (emphasis added).

## II.     Riot closes its acquisition of Whinstone and decides that Whinstone should renege on its contracts with Rhodium.

33.     In April 2021, Whinstone disclosed that it was being acquired by one of Rhodium's largest competitors—Riot Platforms, Inc. (formerly known as Riot Blockchain, Inc.). Riot is one of the largest publicly traded bitcoin mining companies.

34.     It has become clear that Riot had no intention of serving Whinstone's customers or continuing Whinstone's hosting-services business. Instead, Riot wanted the power at Rockdale for itself. To date, Riot and Whinstone have successfully kicked out of Rockdale Whinstone's only two other customers (also bitcoin miners). Rhodium is the sole survivor, despite Riot and Whinstone's efforts.

35.     Riot's campaign against Rhodium began almost immediately. Within a month of the acquisition, which closed on May 26, 2021, Whinstone terminated the contract for 100MW of power at Building D. Riot promptly took that power for itself and now occupies Building D.

36.     Riot did not stop there. In early 2022, Riot's current General Counsel, William Jackman, approached Rhodium and stated that Riot would like to "renegotiate" Whinstone's agreements with Rhodium. Mr. Jackman proposed raising the rate for electricity to the market

price, terminating the deal after two years instead of ten, and imposing other unfavorable provisions on Rhodium. Rhodium, of course, rejected this offer.

37.    Having failed to amend the contracts, Riot and Whinstone began an unlawful campaign to punish Rhodium and put it out of business. Their tactics have included:

    a.    Refusing to pay—and lying about—the energy credits owed to Rhodium;

    b.    Improperly curtailing power to Rhodium's operations such that Rhodium is unable to mine bitcoin at full capacity;

    c.    Unilaterally and forcibly shutting down power to Rhodium's Rockdale operations on multiple occasions—with one shutdown lasting 56 days—forcing Rhodium to seek and receive emergency injunctive relief twice;

    d.    Failing to perform under the Water Agreement and instead delivering dirty, contaminated sludge that, at times, has contained dead fish and other organic lifeforms, thus damaging Rhodium's mining operations, and refusing to let Rhodium make any improvements to the water system;

    e.    Sending baseless invoices to Rhodium for amounts it has never owed; and

    f.    Engaging in bad-faith litigation tactics, including the filing of meritless lawsuits in plain disregard of the parties' agreement to arbitrate, threatening sanctions against Rhodium's attorneys, and torpedoing a $105 million sale of Rhodium's Temple, Texas, facility.

38.    Riot has made no secret that it wants to terminate the contracts with Rhodium, which provide power at "below-market" rates, and to take the energy for itself. In its public SEC filings, Riot has called its contracts with Rhodium "Legacy Contracts inherited through the Whinstone acquisition containing below-market terms." Riot Platforms, Inc., Quarterly Report

(Form 10-Q) 33 (Sept. 30, 2023), https://perma.cc/8XHC-GE82. Riot wants to remove Rhodium from the Rockdale premises, like it has done with other "Legacy Hosting" clients, and use Rhodium's infrastructure "as part of [Riot's own] Bitcoin Mining operations." *Id*.; *see also* Riot Platforms, Inc., Quarterly Report (Form 10-Q) 34 (Sept. 30, 2024), https://perma.cc/M7JQ-AL26 (noting Riot's goal to "vertically-integrate our business at the current Rockdale Facility").

### III.   Whinstone and Mr. Harris misrepresent and fail to pay tens of millions of dollars of energy credits owed to Rhodium.

39.     Whinstone and its former CEO, Mr. Harris, have also misrepresented basic facts to Rhodium about energy credits.

40.     Shortly before Riot completed its purchase of Whinstone, Winter Storm Uri struck. Whinstone curtailed power at the Rockdale facility for nearly two weeks, which prevented Rhodium from mining bitcoin. Whinstone instead sold the power back to the energy grid, reaping over $125 million.

41.     After the storm was over, beginning in April 2021, Mr. Harris indicated to Rhodium that Whinstone did not receive any energy credits due to the storm and that he instead "traded" "credit on the bill for credit worthiness." Ex. H. In May of 2021, Mr. Harris again represented to Rhodium that "[t]he economics of the storm created uncertainty due to the lack of liquidity in ERCOT." Ex. I. According to Mr. Harris, Whinstone "[r]ather than argue over credits" with its retail electric provider TXU, "took the opportunity to derisk" its "credit position." *Id*. Whinstone represented to Rhodium that Whinstone received no energy credits from Winter Storm Uri— credits that, under the Power Agreements, would clearly belong to Rhodium.

42.     Mr. Harris's representation that Whinstone received no energy credits from TXU was a baldfaced lie. In fact, on April 7, 2021—a month ***before*** telling Rhodium otherwise—

Whinstone agreed to accept from TXU **$125.1 million** in energy credits due to Winter Storm Uri. Nonetheless, Whinstone and Riot still have not paid Rhodium any energy credits.

## **PROCEDURAL HISTORY**

43.     This Court knows the procedural history of the litigation between the parties. Accordingly, Rhodium here focuses on a few highlights of the core dispute between the parties and Whinstone and Riot's longstanding pattern of engaging in bad-faith litigation.[5]

**I.      Whinstone files a lawsuit in Texas state court and defies a court order to arbitrate its dispute with Rhodium.**

44.     On May 2, 2023, Whinstone violated the parties' agreement to arbitrate by filing suit in Texas state court in Milam County against Rhodium 30MW, Rhodium JV, Air HPC, and Jordan HPC. Whinstone incorrectly claimed that Rhodium breached its contracts by failing to pay amounts due to Whinstone—claims this Court has since rejected.

45.     Rhodium moved to compel arbitration—as required under the contracts—and the Texas state court agreed, granting Rhodium's motion. Whinstone then sought a petition for writ of mandamus, which the Third Court of Appeals of Texas denied on November 22, 2023.

46.     Unwilling to accept this result, late in the evening on November 27, 2023, Riot took the law in its own hands. Riot directed Whinstone to shut off Rhodium's power supply completely and deployed their armed security to escort Rhodium employees off the premises. The same day, Whinstone sent a "Notice of Termination" purporting to "terminate" the Profit Share Agreements "effective immediately" (the "November 27, 2023, Termination Notice").

47.     The November 2023 unlawful shutdown posed an existential threat to Rhodium. Without power, Rhodium would collapse. Accordingly, it sought and obtained a temporary

---

[5]     Rhodium incorporates by reference all other filings, pleadings, motions, and transcripts from this bankruptcy proceeding.

restraining order and temporary injunction requiring Whinstone to restore power to Rhodium's operations at Rockdale immediately.[6]

48.     But Riot and Whinstone were undaunted. Less than two months later, on January 12, 2024, Whinstone *again* shut off all of Rhodium's power in Building C, which houses 80% of Rhodium's operations at Rockdale. Whinstone's pretextual excuse for this shutdown was a minor accident that had resulted in a modest leak of an innocuous coolant liquid similar to mineral oil. That night, a Riot attorney emailed Rhodium a "Notice of Suspension," falsely characterizing this incident as "catastrophic" and posing an imminent safety risk.

49.     Yet again, Rhodium was forced to seek emergency relief. Rhodium initially sought relief in Milam County, but the district court determined that the matter should be addressed in the arbitration proceedings that Rhodium had commenced. Nonetheless, the district court was clear that it "t[ook] a dim view of Whinstone's cutting power to Rhodium's entire operation for what appears to be a de minimis incident." The district court warned that "[t]his action could come back to haunt Whinstone." Ex. A at 1.

50.     Ultimately, an emergency arbitrator agreed. On March 7, 2024, after a two-day evidentiary hearing, the emergency arbitrator ordered Whinstone to restore Rhodium's power (again). Ex. J.

51.     Whinstone restored power the next day, but the damage was already done. All told, the eight-week shutdown cost Rhodium approximately 158 lost bitcoin.

---

[6]     On March 27, 2024, the Third Court of Appeals of Texas issued an opinion dissolving the district court's injunction purely based on the finding that the injunction lacked the requisite specificity under Texas procedural rules. The Third Court did not disturb any of the district court's underlying factual or legal conclusions regarding the need for injunctive relief against the November 27, 2023, Termination Notice. Before the Third Court's mandate issued, an arbitrator independently enjoined Whinstone from acting on the notice of termination.

52.     Riot and Whinstone still refused to abide by the contracts. In April 2024, Whinstone sent Rhodium yet another purported "Omnibus Notice of Termination" directed at Rhodium JV, Rhodium 30MW, Jordan HPC, and Air HPC, reasserting the purported effectiveness of the November 27, 2023, Termination Notice and purporting to terminate all of the Power Agreements and Profit Share Agreements.

53.     Rhodium had no choice but to obtain additional interim relief for a third time. And for the third time, Rhodium prevailed. On June 4, 2024, the arbitrator, former Texas Supreme Court Justice Harriet O'Neill, formally enjoined Whinstone from taking any action on any of its notices of termination or its Notice of Suspension. Yet again, Whinstone lost.

## II.     Whinstone files another frivolous lawsuit in Tarrant County, Texas.

54.     And yet again, it continued to attack. On July 19, 2024, Whinstone filed an action in the District Court of Tarrant County, Texas, against Imperium Investment Holdings LLC, Rhodium Enterprises Inc., Rhodium Technologies LLC, Rhodium Renewables, and current and former Rhodium principals Nathan Nichols, Chase Blackmon, Cameron Blackmon, and Nicholas Cerasuolo. *See Whinstone US, Inc. v. Imperium Investment Holdings LLC, Nathan Nichols, Chase Blackmon, Cameron Blackmon, Nicholas Cerasuolo, Rhodium Enterprises, Inc., Rhodium Technologies, LLC, and Rhodium Renewables, LLC*, Cause No. 153-354718-24 (the "Tarrant County Litigation").

55.     The allegations in the Tarrant County Litigation were essentially identical to Whinstone's previous allegations in the Milam County suit, which was sent to arbitration. Both cases concerned the same meritless claims that Whinstone was entitled to a share of the profits of all of the operating subsidiaries, including the money that went to outside investors. The only differences were that the Tarrant County case: (1) dressed up these same meritless claims as fraud,

conspiracy, and violations of Texas securities laws; and (2) named as defendants Rhodium Renewables, two other Rhodium entities, and Rhodium's founders and officers.

56.     Whinstone and Riot had an ulterior motive for filing this frivolous lawsuit. Rhodium Renewables operated Rhodium's facility in Temple, Texas, and had negotiated and signed a Term Sheet with an interested buyer to purchase this facility for $105 million and was negotiating a purchase and sale agreement for that amount. Whinstone and Riot wanted to kill that deal to further cripple Rhodium, which would have received a cash-infusion, staved off bankruptcy, and been able to defend itself against Whinstone and Riot.

57.     Riot knew about the deal because Riot itself had expressed interest in acquiring Temple and received access to sensitive information about the timing of the sale. Rhodium's bankers were in contact with Riot, actively negotiating a potential sale, immediately prior to Whinstone filing the lawsuit.

58.     By naming Rhodium Renewables as a defendant, Whinstone intentionally thwarted this sale. The impropriety of naming Rhodium Renewables as a defendant was clear from the face of Whinstone's own petition. The alleged fraud, conspiracy, and securities violations were based upon events in December 2020. Yet, as the petition itself acknowledged, Rhodium Renewables did not exist at that time and was not formed until March 17, 2021.

59.     Rhodium asked Whinstone to dismiss Rhodium Renewables from the lawsuit, but Whinstone refused. Only after this bankruptcy proceeding began and the Temple sale fell through did Whinstone seek to dismiss Rhodium Renewables from the Tarrant County Litigation. It then made an offer to buy Temple itself.

**III.     Rhodium enters Chapter 11 bankruptcy and moves to assume the Whinstone contracts.**

60.     Because of Riot and Whinstone's nefarious actions, Rhodium filed for bankruptcy. The loss of the 100MW in Building D cost Rhodium over $150 million. In addition, Whinstone failed to pay Rhodium tens of millions of dollars in energy credits, undermined Rhodium's mining efforts by failing to provide water, and caused millions more in damages by curtailing and then shutting down completely Rhodium's power. And Whinstone's intentional blocking of Rhodium Renewables' Temple sale cost that entity over $50 million.

61.     Accordingly, on August 24, 2024, Rhodium Encore, Jordan HPC, Rhodium JV, Rhodium 2.0, Rhodium 10MW, and Rhodium 30MW filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. ECF 1. Concurrently, Rhodium filed a Motion to Assume the 26 executory contracts with Whinstone. ECF 7 (the "Motion to Assume"). A few days later, on August 29, 2024, Rhodium Enterprises, Rhodium Technologies, Rhodium Renewables, Air HPC, Rhodium Shared Services, Rhodium Ready Ventures, Rhodium Industries, Rhodium Encore Sub, Jordan HPC Sub, Rhodium 2.0 Sub, Rhodium 10MW Sub, Rhodium 30MW Sub, and Rhodium Renewables Sub also filed for relief under chapter 11 of the Bankruptcy Code. ECF 31. Rhodium filed a Supplemental Motion to Assume joining all debtors to the Motion to Assume the 26 executory contracts with Whinstone. ECF 32.

62.     After these chapter 11 cases began, Riot and Whinstone continued to engage in abusive litigation tactics. Attempting to avoid this Court's jurisdiction, Whinstone opposed the removal of the Tarrant County Litigation to federal court. Whinstone also baselessly threatened Rhodium's attorneys (including an associate who did not even sign the complained-of filing) with sanctions. Once again, Whinstone failed to persuade a neutral decisionmaker. The U.S. District

Court for the Northern District of Texas rejected Whinstone's motion to remand and then transferred the case to this Court.

**IV.    This Court holds a hearing on Phase I of the Motion to Assume and finds that Whinstone did not validly terminate any contracts between the parties.**

63.    On November 12-15, 2024, this Court held a hearing on Rhodium's Motion to Assume. Over the course of four days, this Court saw evidence and heard testimony from both sides.

64.    This Court agreed with Rhodium. ECF 579. The Court's decision, which has preclusive effect and is law of the case, was clear: the Power Agreements remain in force, and Rhodium has correctly calculated the profit it owes to Whinstone.

### AGENCY, VEIL PIERCING, AND ALTER EGO

65.    Rhodium repeats and incorporates by reference all preceding paragraphs.

66.    Whinstone was not acting alone. It is abundantly clear that—throughout this dispute—Whinstone acts and has acted as Riot's agent and/or alter ego.

67.    Riot has made no secret of the fact that it seeks to kick Rhodium out of the Rockdale facility so that it can use the facility for its own mining operations. *Supra* ¶ 38. Indeed, Riot has publicly stated its intent to take over Rhodium's mining operations at Rockdale for its own mining operations. *Id*. And it is using Whinstone to do so.[7]

68.    As Whinstone itself has admitted, it is entirely controlled by Riot. During depositions in Phase I proceedings, Riot's own Vice President of Operations, Kevin Haugen,

---

[7]    Rhodium is not the only bitcoin mining operation that Riot and Whinstone have tried to bully out of existence. Riot successfully terminated Whinstone's hosting agreements with two other mining companies—SBI Crypto and GMO—and kicked those companies out of Rockdale, taking over their mining space for Riot's own use. Both companies have sued Whinstone for damages totaling ***more than half a billion dollars***. Riot Platforms, Inc., Quarterly Report (Form 10-Q) 20 (Sept. 30, 2023), https://perma.cc/8XHC-GE82.

conceded that Riot manages Whinstone's day-to-day power operations, including whether Whinstone curtails power or participates in ancillary services or when Whinstone uses or does not use power. Riot owns all miners that are currently operating in the other buildings at Rockdale, and it is Riot employees who manage Whinstone's day-to-day operations at Rockdale. In Riot's financial presentations, Riot claims that any power credits due to Whinstone are power credits to Riot, and Riot publicly states that Riot is the one who decides when to sell power back to the ERCOT market in exchange for credits. Riot also publicly claims Whinstone's agreements as Riot's own derivative assets. *See* Riot Platforms, Inc., Quarterly Report (Form 10-Q) 34 (July 31, 2024), https://perma.cc/SZX5-729C. It is abundantly clear from Riot's own public statements that Whinstone is a mere pass-through entity to effectuate Riot's own operations at Rockdale. *See* Riot Platforms, Inc., Form 10-K at 33 (Dec. 31, 2023), https://perma.cc/VX8Y-5BSQ (referring to "our Rockdale Facility," "our Data Center Hosting services" at Rockdale, "our miners" at Rockdale, "our Bitcoin Mining Operations" at Rockdale).

69.     There is also evidence that Whinstone is undercapitalized. Riot has publicly admitted that the hosting revenue at Rockdale has been "historically" "less than" the costs to provide such services. Riot Platforms, Inc., Quarterly Report (Form 10-Q) 33 (Sept. 30, 2023), https://perma.cc/8XHC-GE82.

70.     In addition, Riot and Whinstone's officers substantially overlap. In the Phase I proceedings on the Motion to Assume, all of the people on Whinstone's witness list, except for Chad Harris, were Riot employees. These individuals are listed on Riot's website as part of Riot's "Management Team," and all have Riot email addresses. *See* David Schatz, Jeffrey McGonegal, Heath Davidson, Management Team, Riot Platforms (last accessed Feb. 7, 2025), https://perma.cc/H2B7-PKN3. In fact, during the Phase I trial, Whinstone did not put up a single

witness who was purely a Whinstone employee. Additionally, during discovery on the Motion to Assume, Riot employees signed Whinstone's interrogatory responses, and Riot employees served as Whinstone's 30(b)(6) representatives.

71.     There is no daylight between Whinstone and Riot employees. Whinstone employees use Riot email domains, and it is Riot—not Whinstone—that emails Rhodium asking for profit share payments. Riot's accounting firm—not Whinstone's—reviews revenue share calculations. And Whinstone's security personnel wear Riot uniforms and hardhats when onsite at Rockdale. When Whinstone sends invoices, it does so through Riot and under an address reflecting Riot's address in Castle Rock, Colorado.

72.     Riot has been the ultimate decision-maker and has exerted complete dominion and control over Whinstone, its wholly owned subsidiary, to the point that Whinstone no longer has legal or independent significance of its own. Riot even admitted that it was Riot's own management—David Schatz, Ryan Werner, Jeff McGonegal, William Jackman, Alex Travis, and Patrick Wooding—who were involved in the decision to terminate Whinstone's agreements. Ex. K at 11-12. And it was a Riot lawyer who issued the January 12, 2024, Notice of Suspension. It is clear that Riot has been directing Whinstone, its wholly owned subsidiary, to perpetuate an illegal campaign to put a Riot competitor out of business, which Riot has publicly admitted is its goal. *Supra* ¶ 38. Accordingly, Riot has abused the corporate form by using its subsidiary to carry out unlawful acts, and it would be a manifest injustice not to hold Riot equally liable for its egregious conduct.

## COUNT I

## BREACH OF CONTRACT – BUILDING D AGREEMENT
**(Rhodium JV against Whinstone and Riot)**

73.     Rhodium repeats and incorporates by reference all preceding paragraphs.

74.     On January 7, 2021, Rhodium JV and Whinstone entered into a Hosting Agreement whereby Whinstone agreed to provide Rhodium JV with up to 100MW of power in Building D. Accordingly, based on this agreement, Rhodium created a new operating subsidiary called "Rhodium Building D LLC" and commenced plans to expand its operations to Building D.

75.     Unbeknownst to Rhodium, around this same time, Riot was actively trying to acquire Whinstone in order to take all the power at Rockdale for Riot's own bitcoin mining operations. On or around April 8, 2021, Riot and Whinstone signed a deal for Riot to acquire 100% of Whinstone. The acquisition closed on or around May 26, 2021.

76.     After Riot had acquired Whinstone, based upon information and belief, Riot told Whinstone to renege on its contractual obligations with Rhodium regarding Building D. Accordingly, on June 21, 2021, Whinstone's CEO, Chad Harris, sent Rhodium an email rescinding the Building D contract and reneging on all of Whinstone's contractual obligations to provide Rhodium an additional 100MW of power in Building D.

77.     This breach was deliberate, intentional, reckless, and/or grossly negligent.

78.     Whinstone is Riot's agent and alter ego. Riot is, accordingly, equally liable as Whinstone upon Count I.

### COUNT II

### BREACH OF CONTRACT – FAILURE TO PROVIDE ADEQUATE POWER
**(Rhodium 30MW, Rhodium 2.0, Rhodium Encore, Rhodium 10MW, Jordan HPC against Whinstone and Riot)**

79.     Rhodium repeats and incorporates by reference all preceding paragraphs.

80.     Whinstone repeatedly breached the Rhodium 30MW Power Agreement, the Operational 5MW Power Agreements, and the Jordan HPC Power Agreement by failing to provide power in an attempt to ruin Rhodium.

81.     The Rhodium 30MW Power Agreement requires Whinstone to provide a constant supply of 30MW of power to Rhodium 30MW (except, under certain circumstances, the contract requires Whinstone to sell electricity and provide Rhodium 100% of the profits). *See supra* ¶ 28. The Operational 5MW Power Agreements similarly require Whinstone to provide a constant supply of power. *See id*.

82.     The Jordan HPC Power Agreement requires Whinstone to provide a constant supply of 25MW of power to Jordan HPC, with power online at least 97% of the time. Whinstone has not met this up-time threshold.

83.     Whinstone has on numerous occasions curtailed or shut down entirely Rhodium 30MW, Rhodium 2.0, Rhodium Encore, Rhodium 10MW, and Jordan HPC's electricity, in violation of the parties' agreements. For example, on November 27, 2023, and again on January 12, 2024, Whinstone unlawfully and without justification shut off Rhodium power at the Rockdale facility. On numerous other occasions, Whinstone curtailed Rhodium's full use of power without justification to either sell the power or use it for Riot and Whinstone's own benefit and very well may continue to do so.

84.     To the extent power is fully curtailed, the Rhodium entities are unable to mine bitcoin, and when power is partially curtailed, the Rhodium entities mine less bitcoin. Whinstone's unlawful shutdowns also caused damage to Rhodium's equipment and machines.

85.     Whinstone has acted deliberately, intentionally, recklessly, and/or with gross negligence in failing to meet the up-time requirements, improperly curtailing Rhodium's power, and terminating and/or suspending power.

86.     Rhodium 30MW, Rhodium 2.0, Rhodium Encore, Rhodium 10MW, and Jordan HPC are entitled to damages equal to the amount of bitcoin they would have mined during each such occasion.

87.     Whinstone is Riot's agent and alter ego. Riot entirely controls when and how energy is used at Rockdale. Riot is, accordingly, equally liable as Whinstone upon Count II.

### COUNT III

### BREACH OF CONTRACT – MISSING POWER SALES PROCEEDS & OVERCHARGES
**(Rhodium 30MW, Rhodium 2.0, Rhodium Encore, Rhodium 10MW against Whinstone and Riot)**

88.     Rhodium repeats and incorporates by reference all preceding paragraphs.

89.     Whinstone breached the Rhodium 30MW Power Agreement and the operational 5MW Power Agreements, and the Rhodium JV Profit Share Agreement provides no defense.

90.     The Rhodium 30MW Power Agreement and operational 5MW Power Agreements require "Whinstone [to] sell electricity in lieu of providing electricity to [the Rhodium entity] if the ERCOT Market profitability exceeds the [sic] 250% of the contract price." Ex. B § 5.8 and Ex. C § 4.8. When Whinstone does so, it must distribute "100%" of the profits to the relevant Rhodium entity.

91.     On numerous occasions after Rhodium 30MW, Rhodium 2.0, Rhodium Encore, and Rhodium 10MW began drawing power under their respective Power Agreements, Whinstone has sold their power on the ERCOT market. Additionally, Whinstone has unlawfully curtailed Rhodium's power and sold the power for Whinstone's and Riot's benefit.

92.     On each such occasion when Whinstone sold or had contractually promised to sell power, Whinstone failed and refused to provide the profits of those energy sales to the relevant Rhodium entity.

93.     Rhodium 30MW, Rhodium 2.0, Rhodium Encore, and Rhodium 10MW are entitled to damages equal to all profits they were entitled to receive from Whinstone's sale of their power into the ERCOT market.

94.     Whinstone acted deliberately, intentionally, recklessly, and/or with gross negligence in failing to pay Rhodium the required 100% of profits Whinstone has received from ERCOT when it sells electricity into the market in lieu of providing the power to Rhodium.

95.     Additionally, the Rhodium 30MW Power Agreement and the operational 5MW Power Agreements define the "Hosting Fee rate" as "the lesser of either (i) $0.01705 USD or (ii) the 'Pass Through Rate' as hereinafter defined." Ex. B § 3.11.2; Ex. C § 3.11.2.  At times, the Pass Through Rate has been less than $0.01705 USD, yet Whinstone has failed to charge Rhodium this lesser Pass Through Rate in accordance with the terms of the parties' agreements.

96.     Whinstone is Riot's agent and alter ego. Riot is, accordingly, equally liable as Whinstone upon Count III.

## COUNT IV

### BREACH OF CONTRACT – FAILURE TO PROVIDE ADEQUATE WATER
**(Rhodium JV, Rhodium 30MW, Rhodium Encore, Rhodium 2.0, Jordan HPC, Rhodium 10MW, Rhodium Industries against Whinstone and Riot)**

97.     Rhodium repeats and incorporates by reference all preceding paragraphs.

98.     Whinstone breached the Water Agreement, and Whinstone's purported termination of the Profit Share Agreements provides no defense.

99.     The Water Agreement is a valid and binding contract between Rhodium Industries, Rhodium JV, Rhodium 30MW, Jordan HPC, Rhodium Encore, Rhodium 2.0, and Rhodium 10MW on one hand and Whinstone on the other.

100.    These Rhodium entities performed all of their obligations under the Water Agreement. In particular, these Rhodium entities paid the Annual Water Reservation Fee (as

defined in the Water Agreement) as required by the Water Agreement until it became apparent that Whinstone unlawfully breached the Water Agreement and would not abide by its terms.

101.    Under the Water Agreement, Whinstone was required to provide certain "water supply services" to these entities that were critical to the success of their bitcoin mining business. Specifically, Whinstone agreed to build the infrastructure and to provide a specified volume of water to Rhodium for use in its bitcoin mining operation.

102.    Whinstone has not provided the services required under the Water Agreement. Despite numerous requests, Whinstone has never provided Rhodium with an adequate and viable water system to support Rhodium's immersion cooling systems in Building C. The only water Whinstone has provided Rhodium been dirty and contaminated, damaging Rhodium's mining operations. On one occasion, Whinstone's deficient system pumped a dead fish into Rhodium's system.

103.    Whinstone's failure to supply these water supply services was a breach of the Water Agreement.

104.    This breach was deliberate, intentional, reckless, and/or grossly negligent. Whereas Whinstone built Riot a water-filtering system at Rockdale, it has refused to do the same for Rhodium and has never allowed Rhodium to build any filtration system despite Rhodium's multiple requests to do so.

105.    As a result of Whinstone's breach, these Rhodium entities were unable to cool their bitcoin miners as effectively and efficiently as they would have if Whinstone had provided the water supply services. The inability to cool the bitcoin miners with the aid of the water supply services required Rhodium to downclock the miners (*i.e.*, run them less profitably). This not only

resulted in Rhodium drawing less power and thus mining less bitcoin, but it also meant that Whinstone and Riot were siphoning off Rhodium's power and benefiting themselves.

106.    For the years 2022 and 2023, Whinstone's failure to provide water suitable for bitcoin mining caused Rhodium to lose at least 513 bitcoin it otherwise would have mined had Whinstone provided clean water.

107.    For the year 2024, because the water quality was so poor and was damaging Rhodium's equipment, Rhodium had no choice but to turn off water to its operations in Building C and operate without water, resulting in Rhodium losing additional bitcoin.

108.    Whinstone is Riot's agent and alter ego. Riot is, accordingly, equally liable as Whinstone upon Count IV.

**COUNT V**

**BREACH OF CONTRACT – FAILURE TO ARBITRATE**
**(Rhodium JV, Rhodium Renewables, and Air HPC**
**against Whinstone and Riot)**

109.    Rhodium repeats and incorporates by reference all preceding paragraphs.

110.    On May 2, 2023, Whinstone breached the Rhodium JV Profit Share Agreement and Air HPC Profit Share Agreement by instituting litigation in Milam County, Texas, under those agreements despite those agreements requiring claims arising under those agreements to be instituted in arbitration.

111.    Whinstone further breached the Rhodium JV Profit Share Agreement and Air HPC Profit Share Agreement by opposing Rhodium's motion to compel arbitration and filing a baseless petition for writ of mandamus in the Third Court of Appeals of Texas.

112.    Additionally, around spring of 2024, Rhodium Renewables sought to sell its facility in Temple, Texas. Rhodium Renewables had a letter of intent from an interested buyer to buy the Temple facility for $105 million plus millions of dollars of other monetary benefits.

25

113.    Knowing this and with a conscious desire to prevent Rhodium Renewables from entering into this agreement to sell the Temple, Texas, site on July 19, 2024, Whinstone filed a frivolous lawsuit in Tarrant County, Texas, naming Rhodium Renewables and Rhodium's founders and officers as defendants.

114.    Whinstone breached the Rhodium JV Profit Share Agreement by instituting the Tarrant County Litigation despite the Rhodium JV Profit Share Agreement requiring claims arising under that agreement to be instituted in arbitration. Whinstone and Riot knew that this lawsuit should never have been filed and had no legal or factual basis, and they further knew that any such lawsuit should have been instituted in arbitration.

115.    As a direct result of Rhodium Renewables being named a defendant in the Tarrant County Litigation, Rhodium Renewables was unable to complete its sale of its facility in Temple.

116.    Riot and Whinstone's actions, including blocking the sale of Temple, foreseeably forced Rhodium into bankruptcy.

117.    Whinstone has acted deliberately, intentionally, recklessly, and/or with gross negligence in initiating the Milam County lawsuit and the Tarrant County Litigation despite the arbitration clauses in those Profit Share Agreements.

118.    Whinstone is Riot's alter ego. Riot is, accordingly, equally liable as Whinstone upon Count V.

## COUNT VI

## TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS RELATIONSHIP
### (Rhodium Renewables
### against Whinstone and Riot)

119.    Rhodium repeats and incorporates by reference all preceding paragraphs.

120.    On July 19, 2024, Whinstone and Riot instituted frivolous litigation against Rhodium Renewables in Tarrant County, Texas. At the same time, Rhodium Renewables was

actively contemplating a sale of its Temple, Texas, facility. Whinstone and Riot had no legal or factual basis to name Rhodium Renewables as a defendant because it did not even exist at the time of the relevant allegations in the Tarrant County Litigation. Absent Whinstone and Riot naming Rhodium Renewables as a defendant in Tarrant County, Rhodium would have entered into a sale of the Temple, Texas, facility.

121.    Whinstone and Riot's action in instituting the frivolous Tarrant County Litigation and naming Rhodium Renewables as a defendant was further actionable under the recognized tort of malicious prosecution. Whinstone, at Riot's direction, instituted civil proceedings against Rhodium Renewables with pure malice and no basis for naming Rhodium Renewables as a defendant in the Tarrant County Litigation.

122.    Riot and Whinstone's deliberate and bad faith Tarrant County Litigation foreseeably caused Rhodium to lose out on the Temple sale, resulted in Rhodium losing value to its business, and ultimately forced Rhodium into bankruptcy. Riot and Whinstone named Rhodium Renewables with no other purpose other than to prevent the sale of Temple. Because of Riot and Whinstone's actions, Rhodium lost out on the sale, suffered damages, and entered into bankruptcy.

123.    Riot is directly liable for its actions in directing Whinstone to proceed with filing a frivolous lawsuit in Tarrant County. Alternatively, Whinstone is Riot's agent and alter ego. Riot is, accordingly, equally liable as Whinstone upon Count VI.

### COUNT VII TORTIOUS INTERFERENCE WITH CONTRACTS
**(Rhodium JV, Rhodium 30MW, Rhodium 2.0, Rhodium Encore, Rhodium 10MW, Jordan HPC against Riot)**

124.    Rhodium repeats and incorporates by reference all preceding paragraphs.

125.    Prior to Riot's acquisition of Whinstone, Rhodium had valid and enforceable Power Agreements in place with Whinstone.

126.   Riot sought that power for itself to the detriment of Rhodium and other bitcoin mining operations at Rockdale.

127.   Riot did not intend to serve those customers or continue Whinstone's data-servicing business. Rather, Riot acquired Whinstone with the intent of taking power it knew belonged to Rhodium and other customers at Rockdale for itself.

128.   Riot tortiously interfered with Whinstone's contracts with disregard to Whinstone's best interests. Whinstone is a hosting company and does not mine bitcoin. Riot's sole motivation for destroying Whinstone's hosting agreements was to benefit Riot so that Riot could take the power at Rockdale.

129.   Riot's actions directly injured Rhodium. As a result of Riot's interference, Rhodium lost a valuable 100MW contract with Whinstone. Additionally, Riot's longstanding campaign to unlawfully cancel Whinstone's power contracts with Rhodium have injured Rhodium's business, has forced Rhodium to expend significant legal fees, and has forced Rhodium into bankruptcy.

## APPLICATION FOR PERMANENT INJUNCTIVE RELIEF
### (Channeling Injunction)

130.   Rhodium repeats and incorporates by reference all preceding paragraphs.

131.   Rhodium requests entry of a permanent injunction to: (1) prohibit Whinstone from acting upon any of its previous pretextual termination notices and notices of suspension and (2) require Whinstone to seek permission from this Court before issuing or acting upon any future attempt to terminate the contracts or suspend its performance thereunder.

132.   Rhodium meets all four elements required for permanent injunctive relief. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (a party seeking injunctive relief "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.").

    a.    ***First***, Rhodium has suffered and continues to face irreparable injury. Whinstone's long-lasting campaign to put Rhodium out of business has done irreparable damage to Rhodium and its directors' and officers' reputations, has lost Rhodium business deals, and has forced Rhodium into bankruptcy, necessitating Rhodium to pay millions of dollars in unrecoverable legal fees.

    b.    ***Second***, monetary damages are inadequate to wholly compensate Rhodium for the injuries Whinstone has caused and will cause. Rhodium cannot fully recover for harm done to its business reputation, lost business opportunities, and unrecoverable costs from bankruptcy proceedings.

    c.    ***Third***, the balance of interests favors Rhodium. Whinstone has a demonstrated pattern of engaging in unlawful terminations and self-help to shut down Rhodium's custom-built operations at Rockdale. Whinstone shut down power to Rhodium's operations in Building C in January 2024 without a lawful basis, even though Whinstone was at that time subject to an injunction entered by the Milam County District Court. It is only a matter of time before Whinstone resorts to this behavior again and invents some future pretextual and meritless reason to terminate the agreements and force Rhodium out of Rockdale. It cannot be trusted to abide by this Court's definitive ruling on the Motion to Assume. Rhodium's contracts with Whinstone and Rhodium's operations at Rockdale are Rhodium's lifeblood.

Without an injunction ensuring Rhodium's continued operations, Rhodium will always live with a tangible threat that Whinstone will shut off power at a moment's notice. Whinstone will not be harmed by injunctive relief requiring them to continue to abide by the valid and enforceable contracts the parties have been operating under for the previous four years. Injunctive relief will merely prevent Whinstone from engaging in the type of unlawful and predatory conduct Whinstone has subjected Rhodium to for years.

d.    ***Fourth***, the public interest favors an injunction. Injunctive relief will ensure that Rhodium can continue its operations at Rockdale without the constant threat of termination. This would allow Rhodium to continue employing its highly skilled workforce in Rockdale, Texas, ensure that these bankruptcy proceedings continue without disruption, and that a valuable company continues its bitcoin mining operations.

133.    Additionally, Rhodium will succeed on the merits. Whinstone repeatedly issued unlawful termination notices to Rhodium in clear breach of the parties' agreements. Whinstone has spent years engaging in bad faith litigation to push Rhodium out of the Rockdale site based upon pretextual arguments that had no merit and that this Court has now definitively rejected with preclusive effect. Whinstone's parent company, Riot, has made no secret of its intention to get rid of Rhodium. On two occasions, Whinstone has gone so far as to shut down Rhodium's operations, which has cost Rhodium millions of dollars in lost revenue and legal fees. Whinstone lost every time it has tried to kick Rhodium out of Rockdale, and Rhodium will succeed in vindicating its rights for Whinstone's myriad breaches of contracts and other tortious and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Rhodium respectfully requests that the Court:

a.  Enter judgment in favor of Plaintiffs on each of their claims;

b.  Declare that Whinstone breached the Building D Agreement by unlawfully terminating the agreement without cause, and that Riot is vicariously liable for this breach;

c.  Declare that Whinstone breached the Rhodium 30MW Power Agreement, the operational 5MW Power Agreements, and the Jordan HPC Power Agreement by unlawfully curtailing and/or shutting off entirely Rhodium's power on numerous occasions, and that Riot is vicariously liable for this breach;

d.  Declare that Whinstone breached the Rhodium 30MW Power Agreement and the operational 5MW Power Agreement by failing to pay Rhodium 100% of the profits from the sale of electricity and/or by failing to charge Rhodium the correct Hosting Fee rate, and that Riot is vicariously liable for this breach;

e.  Declare that Whinstone has breached the Water Agreement by failing to provide Rhodium adequate water to support bitcoin mining operations, and that Riot is vicariously liable for this breach;

f.  Declare that Whinstone breached the Rhodium JV Profit Share Agreement and the Air HPC Profit Share Agreement by filing suit in Milam County, opposing Rhodium's motion to compel arbitration filing a baseless petition for writ of mandamus in the Texas Third Court of Appeals, and by instituting the Tarrant County Litigation, and that Riot is vicariously liable for these breaches;

g.  Declare that Whinstone tortiously interfered with Rhodium's prospective business relationship by filing a frivolous lawsuit in Tarrant County, Texas, that prevented the sale of Rhodium's Temple, Texas, facility, and resulted in Rhodium Renewables' bankruptcy, and that Riot is vicariously liable for this tortious interference;

h.  Declare that Riot tortiously interfered with Rhodium's contracts with Whinstone by acquiring Whinstone and by then directing Whinstone to baselessly terminate those contracts;

i.  Award Rhodium money damages for all of Whinstone's and Riot's unlawful conduct;

j.  Award Rhodium exemplary damages;

k.  Award Rhodium attorneys' fees and costs incurred in litigating each and every aspect of the parties' dispute;

l.  Award Rhodium pre- and post-judgment interest;

m.  Award Rhodium a permanent injunction prohibiting Whinstone and Riot from acting upon any termination notices and notices of suspension and requiring Whinstone and Riot to seek permission from this Court before issuing or acting upon any future termination or suspension;

n.  Award all other relief, general or special, either at law or in equity, to which Rhodium may justly be entitled, including emergency relief and interim relief as warranted, injunctive relief, and sanctions.

Respectfully submitted this 11th day of February, 2025.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Patricia B. Tomasco*
Patricia B. Tomasco (SBN 01797600)
Cameron Kelly (SBN 24120936)
Alain Jaquet (*pro hac vice*)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com
Email: cameronkelly@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com

Eric Winston (*pro hac vice*)
Razmig Izakelian (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Email: ericwinston@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com

- and -

STRIS & MAHER LLP

Peter K. Stris (*pro hac vice*)
Victor O'Connell (*pro hac vice*)
John Stokes (*pro hac vice*)
Peter Brody (*pro hac vice*)
Helen Marsh *(pro hac vice)*
777 S. Figueroa Street, Suite 3850
Los Angeles, California 90017
Phone: (213) 995-6800
Email: pstris@stris.com
Email: voconnell@stris.com
Email: jstokes@stris.com
Email: pbrody@stris.com
Email: hmarsh@stris.com

Bridget C. Asay *(pro hac vice)*
15 E State Street, Suite 2
Montpelier, VT 05602
Phone: (802) 858-4285
Email: basay@stris.com

Colleen R. Smith (*pro hac vice*)
1717 K St NW Suite 900
Washington, DC 20006
Phone: (202) 800-5749
Email: cmith@stris.com

- and -

LEHOTSKY KELLER COHN LLP

William T. Thompson (*pro hac vice*)
Todd Disher (*pro hac vice*)
Alexis Swartz (*pro hac vice*)
will@lkcfirm.com
Email: todd@lkcfirm.com
Email: alexis@lkcfirm.com
408 W. 11th Street, 5th Floor
Austin, TX 78701

*Counsel to the Debtors and Debtors-In-Possession*